CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ASENCION ROLDAN MORENO, DANIEL
MORALES, EBER GARCIA FLORES
(A.K.A JUNIOR), and JESUS ANGEL
GARCIA FLORES, *individually and on behalf*
*of others similarly situated,*

                          *Plaintiffs*,

        -against-

3402 BROADWAY TAVERN INC (D/B/A
THE TRESTLE), JOSEPH BROWN, and
JAQUELINE M. KELLY,

                        *Defendants.*
--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Asencion Roldan Moreno, Daniel Morales, Eber Garcia Flores (a.k.a Junior), and

Jesus Angel Garcia Flores , individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, CSM Legal, P.C., upon their knowledge and belief,

and as against 3402 Broadway Tavern Inc (d/b/a The Trestle), ("Defendant Corporation"), Joseph

Brown and  Jaqueline M. Kelly, ("Individual Defendants"), (collectively, "Defendants"), allege as

follows:

<u>**NATURE OF ACTION**</u>

    1.     Plaintiffs are both current former employees of Defendants 3402 Broadway Tavern

Inc (d/b/a The Trestle), Joseph Brown, and Jaqueline M. Kelly.

2.      Defendants own, operate, or control an American restaurant, located at 34-02 Broadway, Astoria, New York 11106 under the name "The Trestle".

3.      Upon information and belief, individual Defendants Joseph Brown, and Jaqueline M. Kelly, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs have been employed as cooks, a dishwashers, porters, and food preparers at the restaurant located at 34-02 Broadway, Astoria, New York 11106.

5.      At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of

1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an American restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

14.     Plaintiff Asencion Roldan Moreno ("Plaintiff Roldan" or "Mr. Roldan") is an adult individual residing in Queens County, New York.

15.     Plaintiff Roldan was employed by Defendants at The Trestle from approximately 2016 until on or about December 29, 2023.

16. Plaintiff Daniel Morales ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Queens County, New York.

17. Plaintiff Morales was employed by Defendants at The Trestle from approximately June 2022 until on or about November 8, 2023.

18. Plaintiff Eber Garcia Flores (a.k.a Junior) ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Queens County, New York.

19. Plaintiff Garcia was employed by Defendants at The Trestle from approximately March 2022 until on or about January 2024.

20. Plaintiff Jesus Angel Garcia Flores ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in Queens County, New York.

21. Plaintiff Flores was employed by Defendants at The Trestle from approximately July 2018, and is currently still employed by Defendants.

*Defendants*

22. At all relevant times, Defendants own, operate, or control an American restaurant, located at 34-02 Broadway, Astoria, New York 11106, under the name "The Trestle".

23. Upon information and belief, 3402 Broadway Tavern Inc (d/b/a The Trestle) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 34-02 Broadway, Astoria, New York 11106.

24. Defendant Joseph Brown is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Joseph Brown is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Joseph Brown possesses operational control over Defendant Corporation, an ownership interest in Defendant

Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

25.    Defendant Jaqueline M. Kelly is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jaqueline M. Kelly is sued individually in her capacity as a manager of Defendant Corporation. Defendant Jaqueline M. Kelly possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

26.    Defendants operate an American restaurant located in a neighborhood in Queens.

27.    Individual Defendants, Joseph Brown and Jaqueline M. Kelly, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

28.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

29.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

30.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

31.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

32.    Upon information and belief, Individual Defendant Joseph Brown operates Defendant Corporation as either an alter ego of himself and/or failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

33.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

34.     In each year from 2019 to 2025, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

36.     Plaintiffs are both current and former employees of Defendants who have been employed as cooks, dishwashers, porters, and food preparers.

37.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Asencion Roldan Moreno*

38.     Plaintiff Roldan was employed by Defendants from approximately 2016 until on or about December 29, 2023.

39.     Defendants employed Plaintiff Roldan as a cook.

40.     Plaintiff Roldan regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

41.     Plaintiff Roldan's work duties required neither discretion nor independent judgment.

42.    Throughout his employment with Defendants, Plaintiff Roldan regularly worked in excess of 40 hours per week.

43.    From approximately May 2019 until on or about December 2019, Plaintiff Roldan worked approximately 45 to 50 hours per week, 5 to 6 days a week. During this period, Plaintiff Roldan worked more than 10 hours per day, 2 days a week.

44.    From approximately March 2020 until on or about June 2020, Plaintiff Roldan worked from approximately 10 hours per week, 2 days a week.

45.    From approximately July 2020 until on or about December 2020, Plaintiff Roldan worked approximately 15 hours per week, 3 days a week.

46.    From approximately January 2021 until on or about April 2021, Plaintiff Roldan worked approximately 30 hours per week, 4 days a week.

47.    From approximately May 2021 until on or about October 2021, Plaintiff Roldan did not work for Defendants.

48.    From approximately November 2021 until on or about December 29, 2023, Plaintiff Roldan worked approximately 40 to 52 hours per week, 4 days a week. During this period, Plaintiff Roldan worked more than 10 hours per day, 2 days a week.

49.    Throughout his employment, Defendants paid Plaintiff Roldan his wages in cash.

50.    From approximately May 2019 until on or about April 2021, Defendants paid Plaintiff Roldan $16.00 per hour.

51.    From approximately November 2021 until on or about November 2022, Defendants paid Plaintiff Roldan $17.00 per hour.

52.    From approximately December 2022 until on or about December 29, 2023, Defendants paid Plaintiff Roldan $18.00 per hour.

53.    Defendants never granted Plaintiff Roldan any breaks or meal periods of any kind.

54.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Roldan regarding overtime and wages under the FLSA and NYLL.

55.    Defendants did not provide Plaintiff Roldan an accurate statement of wages, as required by NYLL 195(3).

56.    Defendants did not give any notice to Plaintiff Roldan, in English and in Spanish (Plaintiff Roldan's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

57.    As a result of Defendants' failure to provide Plaintiff Roldan with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Daniel Morales*

58.    Plaintiff Morales was employed by Defendants from approximately June 2022 until on or about November 8, 2023.

59.    Defendants employed Plaintiff Morales as a cook and a porter.

60.    Plaintiff Morales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

61.    Plaintiff Morales's work duties required neither discretion nor independent judgment.

62.    Throughout his employment with Defendants, Plaintiff Morales regularly worked in excess of 40 hours per week.

63.    From approximately June 19, 2022, until on or about November 8, 2023, Plaintiff Morales worked approximately 42.50-47.50 to 45-50 hours per week, 5 days a week.

64. Throughout his employment, Defendants paid Plaintiff Morales his wages in cash.

65. From approximately June 19, 2022, until on or about November 8, 2023, Defendants paid Plaintiff Morales $20.00 per hour.

66. For approximately one day, Defendants did not pay Plaintiff Morales any wages for his work.

67. Defendants never granted Plaintiff Morales any breaks or meal periods of any kind.

68. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

69. Defendants did not provide Plaintiff Morales an accurate statement of wages, as required by NYLL 195(3).

70. Defendants did not give any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

71. As a result of Defendants' failure to provide Plaintiff Morales with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Eber Garcia Flores (a.k.a Junior)*

72. Plaintiff Garcia was employed by Defendants from approximately March 2022 until on or about August 2024.

73. Defendants employed Plaintiff Garcia as a dishwasher and a salad preparer.

74. Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

75.     Plaintiff Garcia's work duties required neither discretion nor independent judgment.

76.     Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

77.     From approximately March 2022 until on or about Early May 2022, Plaintiff Garcia worked approximately 47 hours per week, 3 days a week. During this period, Plaintiff Garcia worked more than 10 hours per day, 3 days a week.

78.     From approximately Mid-May 2022 until on or about July 2022, Plaintiff Garcia worked approximately 57 hours per week, 4 days a week. During this period, Plaintiff Garcia worked more than 10 hours per day, 3 days a week.

79.     From approximately July 2022 until on or about August 2024, Plaintiff Garcia worked approximately 44 hours per week, 4 days a week. During this period, Plaintiff Garcia worked more than 10 hours per day, 1 day a week.

80.     Throughout his employment, Defendants paid Plaintiff Garcia his wages in cash.

81.     From approximately May 2022 until on or about September 2023, Defendants paid Plaintiff Garcia $13.00 per hour.

82.     From approximately Mid-September 2023 until on or about August 2024, Defendants paid Plaintiff Garcia $16.00 per hour.

83.     Defendants never granted Plaintiff Garcia any breaks or meal periods of any kind.

84.     Although Plaintiff Garcia was required to keep track of his time, on various occasions the punching machine was not functioning properly.

85.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

86. Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

87. Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88. As a result of Defendants' failure to provide Plaintiff Garcia with a Notice of Pay Rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Jesus Angel Garcia Flores*

89. Plaintiff Flores has been employed by Defendants from approximately July 2018 until the present day.

90. Defendants have employed Plaintiff Garcia as a cook, a dishwasher, and a food preparer.

91. Plaintiff Flores has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

92. Plaintiff Flores' work duties have required neither discretion nor independent judgment.

93. Throughout his employment with Defendants, Plaintiff Flores has regularly worked in excess of 40 hours per week.

94. From approximately February 2019 until on or about April 2019, Plaintiff Flores worked approximately 55 to 60 hours per week, 6 days a week.

95.     From approximately May 2019 until on or about September 2019, Plaintiff Flores worked approximately 65 to 70 hours per week, 6 days a week.

96.     From approximately October 2019 until on or about February 2020, Plaintiff Flores worked approximately 55 to 60 hours per week, 6 days a week.

97.     From approximately March 2020 until on or about July 2020, Plaintiff Flores worked approximately 20 to 26 hours per week, 3 to 4 days a week.

98.     From approximately August 2020 until on or about October 2020, Plaintiff Flores worked approximately 55 to 60 hours per week, 6 days a week.

99.     From approximately May 2021 until on or about September 2021, Plaintiff Flores worked approximately 65 to 70 hours per week, 6 days a week.

100.    From approximately October 2021 until on or about February 2022, Plaintiff Flores worked approximately 55 to 60 hours per week, 6 days a week.

101.    From approximately May 2022 until on or about September 2022, Plaintiff Flores worked approximately 65 to 70 hours per week, 6 days a week.

102.    From approximately April 2023 until on or about May 2023, Plaintiff Flores worked approximately 55 to 60 hours per week, 6 days a week.

103.    From approximately October 2023 until the present day, Plaintiff Flores has worked approximately 42 to 48 hours per week, 5 days a week.

104.    Throughout his employment, Defendants have paid Plaintiff Flores his wages in cash.

105.    From approximately 2019 until on or about August 2020, Defendants paid Plaintiff Flores $13.00 per hour.

106.    From approximately September 2020 until on or about December 2021, Defendants paid Plaintiff Flores $15.00 per hour.

107. From approximately January 2022 until on or about December 2022, Defendants paid Plaintiff Flores $16.00 per hour.

108. From approximately January 2023, until on or about July 2023, Defendants paid Plaintiff Flores $17.00 per hour.

109. From approximately August 2023 until current, Defendants have paid Plaintiff Flores $18.00 per hour.

110. Defendants have never granted Plaintiff Flores any breaks or meal periods of any kind.

111. No notification, either in the form of posted notices or other means, have ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

112. Defendants have never provided Plaintiff Flores an accurate statement of wages, as required by NYLL 195(3).

113. Defendants have never given any notice to Plaintiff Flores, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

114. As a result of Defendants' failure to provide Plaintiff Flores with a Notice of Pay Rate or accurate wage statements with each payment of wages, he has been prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he has been underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Defendants' General Employment Practices*

115. At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours

a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

116.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

117.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

118.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

119.    Defendants have paid Plaintiffs their wages in cash.

120.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

121.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

122.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

123.    Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

124. Defendants have failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

125. Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

126. As a result of Defendants' failure to provide Plaintiffs and other employees a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiffs and other employees have been prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they have been underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

## FLSA COLLECTIVE ACTION CLAIMS

127. Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf

of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

128.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

129.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

130.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

131.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

132.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

133.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

134.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable

minimum hourly rate, in violation of 29 U.S.C. § 206(a).

135.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

136.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

137.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

139.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

140.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

141.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

143.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

144.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

145.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

148.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

149.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

152.	Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

153.	Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

154.	Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155.	Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

156.	As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL §195.

157.	Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

158.	Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

160.    As a result of Defendants' failure to furnish accurate statements to Plaintiff, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

161.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)        Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)        Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)        Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)        Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)        Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)        Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)        Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)        Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)        Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

February 14, 2025

CSM LEGAL, P.C

By:        /s/ Catalina Sojo, Esq.
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

November 13, 2023

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Asencion Roldan Moreno

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                   November 13, 2023

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

November 13, 2023

**BY HAND**

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Daniel Morales

Legal Representative / Abogado:       CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                         November 13, 2023

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

November 13, 2023

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Eber Garcia Flores

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                    November 13, 2023

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

November 13, 2023

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Jesus Angel Garcia Flores

Legal Representative / Abogado:       CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                         November 13, 2023

*Certified as a minority-owned business in the State of New York*